HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
SUMMER LACEY (Bar No. 308614)
(E-Mail: Summer_Lacey@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7330
Facsimile: (213) 894-0081

Attorneys for Defendant
TREVON MAURICE FRANKLIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TREVON MAURICE FRANKLIN,<br>Defendant. | Case No. CR 17-206-JAK<br><br>**TREVON MAURICE FRANKLIN'S POSITION ON SENTENCING; EXHIBIT**<br><br>Sentencing Date: September 27, 2018<br>Sentencing Time: 8:30 a.m. |

    Defendant Trevon Maurice Franklin, by and through his counsel of record, Deputy Federal Public Defender Summer Lacey, hereby submits his position regarding factors relevant to sentencing.

                                  Respectfully submitted,

                                    HILARY POTASHNER
                                    Federal Public Defender

DATED: September 12, 2018    By: *Summer Lacey*
                                    Summer Lacey
                                    Deputy Federal Public Defender
                                    Attorneys for TREVON MAURICE FRANKLIN

# I.

# INTRODUCTION

Trevon Maurice Franklin's life has been marred by sickness and struggle. When he was just 14 years old, he stepped into the role of a caretaking and began providing unconditional support and physical care for his mother, who suffers from epilepsy and diabetes. While sitting in his mother's hospital room as a teenager, Mr. Franklin could not have imagined that in just a few short years his position and place in the world would be transformed from that of a child to being a parent. Mr. Franklin was not prepared to become a father at the age of 20. However, he cannot conceptualize life without his son. Unfortunately, despite his devotion to his son, Mr. Franklin's entry into adulthood has been riddled with mistakes. As a result of immature actions, Mr. Franklin now finds himself facing sentencing for a federal crime. Mr. Franklin has no prior criminal record. He is just 22 years old.

Mr. Franklin has pled guilty to one count of Criminal Infringement of a Copyright, a misdemeanor offense. While Mr. Franklin's history does not absolve him of responsibility for committing the instant offense, it does provide an understanding of the circumstances surrounding his actions during the time in which he committed this life altering mistake. Mr. Franklin hopes to one day obtain a college degree and eventually work in law enforcement. His ultimate goals are to become the type of man that his son can be proud of, and to never again have contact with the criminal justice system.

The presentence report (PSR) has determined Mr. Franklin's overall offense level to be 8, with a resulting guideline range of 0-6 months imprisonment. The probation department recommends that Mr. Franklin be sentenced to one year probation. Mr. Franklin agrees with the probation department's guideline calculation and proposed sentence. Accordingly, and in consideration of the 18 U.S.C. § 3553(a) factors discussed more thoroughly below, Mr. Franklin respectfully requests a total

sentence of one year probation. Such a sentence would be sufficient, but not greater than necessary, in light of Mr. Franklin's tumultuous personal history, remorse for the offense, and his continued desire to redirect his life.

## II.

## SENTENCING CONSIDERATIONS UNDER 18 U.S.C. § 3553(A)

A. <u>The Overarching Principle</u>

The very first sentence of 18 U.S.C. § 3553(a) establishes the following requirement: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in subparagraph (2) of this subsection." The Supreme Court has described this as the "overarching provision" in § 3553(a). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). This statement by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key – in fact, the key – requirement that a sentence must satisfy.

In arriving at the appropriate sentence, § 3553(a) directs the court to consider: (1) the nature and circumstances of the offense, (2) the history and characteristics of the offender (3) the need to impose a punishment that reflects the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, (4) to afford adequate deterrence, (5) to protect the public from further crimes, (6) to provide the defendant with needed education, vocational training, medical care or other correctional treatment, and (7) the kinds of sentences that are available. 18 U.S.C. § 3553(a)(1), (2). Further, by enacting § 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Additionally, § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing and appropriate sentence." 18 U.S.C. § 3661. Finally, "extraordinary circumstances are not needed to justify a

3

sentence outside the guidelines range." *United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008).

In sum, in every case, courts must consider all of the statutory factors, not just the guidelines, in arriving at the appropriate sentence.

B. <u>Mr. Franklin's Personal History and Characteristics (§ 3553(a)(1))</u>

    1. *Mr. Franklin's Childhood.*

Trevon Maurice Franklin was born in Fresno, California. PSR ¶ 43. His parents, Angeline Guidry Franklin and Bryant Deshawn Franklin Sr., met and began dating in high school. Mr. Franklin is the youngest of the couple's four children. PSR ¶ 44. For as long as Mr. Franklin can remember, his father, Bryant, has worked at McDonald's restaurant. PSR ¶ 43. Indeed, Bryant began working at McDonald's when he was just a teenager and over the course of his career has worked his way up to the district manager position. Because of Bryant's job, Mr. Franklin and his family relocated frequently. PSR ¶ 45. By the time Mr. Franklin was entering high school, he had already lived in Fresno, California, Oklahoma City, Oklahoma, and Lubbock, Texas.

When Mr. Franklin was 14 years old, his parents informed him and his siblings that they were separating. PSR ¶ 46. Mr. Franklin then made the decision to move with his mother back to Fresno. This was a difficult time for Mr. Franklin and his family. PSR ¶ 47. While his parents did all they could to ensure that their children continued to feel loved and supported, it was clear that the tumultuous nature of their relationship had left a negative impression on their children.

    2. *Mr. Franklin's Life in Fresno Following his Parents' Divorce.*

Mr. Franklin had a difficult time adjusting to life back in Fresno. His mother, Angeline, who had struggled with epilepsy and diabetes, began experiencing frequent seizures and increased diabetic neuropathy pain in her lower legs and feet. Mr. Franklin remembers his mother being taken to the hospital on a regular basis. Whenever Angeline was hospitalized, Mr. Franklin would stay by her side until she

was discharged.  PSR ¶ 47. With his father living in Texas, Mr. Franklin tried to do all he could to provide care, love and support to his mother.

Over time, the stress of caring for his mother began to wear on Mr. Franklin.  He started skipping class and neglecting his studies.  PSR ¶ 48.  Between 9th and 12th grade, Mr. Franklin attended four different high schools.  It wasn't until the final semester of his senior year that Mr. Franklin began making an effort in his classes.  Though he was behind, his goal was to graduate with his class. Mr. Franklin completed 170 credits during the second semester of his senior year to graduate on time.

*3.   Mr. Franklin Starts Providing Home Health Care and Becomes a Parent Himself.*

After graduation, Mr. Franklin and his family began to experience increased financial difficulties.  His mother struggled to pay the rent, while Mr. Franklin looked for employment opportunities.  Then, around the end of 2015 and the beginning of 2016, Mr. Franklin began working as a home health care specialist.  PSR ¶ 59.  Upon reflection, Mr. Franklin believes that he was drawn to the health care field because of his experiences helping his mother throughout his childhood.  Mr. Franklin continues to provide health care aide services to others when needed, and offers regular supportive care to his mother.

In August of 2016, Mr. Franklin's son Maurice Franklin was born.  PSR ¶ 49. While Mr. Franklin had not planned on becoming a father at the age of 20, he cannot imagine his life without his son.  He shares custody with Maurice's mother.  Mr. Franklin would like nothing more than to be able to be a positive example for his son to look up to.

*4.   Mr. Franklin's Current Struggles.*

Since his arrest, Mr. Franklin has been trying to redirect his life.  At the end of 2017, he was attending Devry University and majoring in criminal justice.  However, in late spring of 2018, Mr. Franklin's mother, Angeline, was struck by a hit and run driver

as she walked to the family's home one night. Her body was discovered in the street. Mr. Franklin was notified of the incident once she was taken to the hospital. Angeline was critically injured and underwent multiple surgeries. Mr. Franklin was devastated by the incident and devoted much of his attention to supporting his mother's lengthy rehabilitation. It was during this period of time that Mr. Franklin allegedly violated the terms of his pretrial release. The Court has yet to determine whether Mr. Franklin has violated his release conditions as alleged. Regardless of the allegations, Mr. Franklin recognizes that he has made mistakes. However, he is committed to fulfilling his obligations on probation and understands the negative consequences that can result from non-compliance with the Court's directives.

C.   <u>The Nature and Circumstances of the Offense (§ 3553(a)(1))</u>.

The instant offense of Criminal Infringement of Copyright is reflective of poor choices tied to Mr. Franklin's history and immaturity. Mr. Franklin's shame for the choices he made in 2016 and the lasting effects that they have had on his life is overwhelming. He knows that in order to accomplish his goals, he must make positive life decisions and invest in himself. Further, while Mr. Franklin's alleged actions while on pretrial release can be construed to reflect a lack of appreciation for wrongdoing and an unwillingness to comply with supervision, that is not the case. Rather, Mr. Franklin is dedicated to using this entire experience to positively shape his future decisions and redirect his life. Indeed, in a letter to the Court, Mr. Franklin explains:

> I [now] understand that every action has its consequences…I regret posting the movie. I didn't think how serious the crime was that was being committed. I know not to commit a crime like copyright infringement again, or any crime because I am a father not a criminal.

Exhibit A, Letter from Trevon Maurice Franklin.

//

//

D.  <u>The Purposes of Sentencing (§ 3553(a)(2)): Deterrence, Just Punishment, and the Need to Provide Medical Care, Training, or Treatment.</u>

The defense does not deny that deterrence and just punishments are necessary for transgressions of the law. But on balance, a sentence of one year probation achieves those goals in the present case. Mr. Franklin is not proud of his mistakes or his contact with the criminal justice system. His goal is to honor his family and teach his son by living a more productive and positive life.

## III.
## CONCLUSION

For the foregoing reasons, Mr. Franklin respectfully submits that a sentence of one year probation is sufficient *and* no greater than necessary to achieve the statutory purposes of sentencing.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: September 12, 2018     By:  */s/ Summer Lacey*
SUMMER LACEY
Deputy Federal Public Defender
Attorneys for TREVON MAURICE FRANKLIN

# PROOF OF SERVICE

I, Michelle Carlos, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **TREVON MAURICE FRANKLIN'S POSITION ON SENTENCING; EXHIBIT** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] via E-mail addressed as follows:

Luis A. Rivas, USPO
Luis_Rivas@cacp.uscourts.gov

This proof of service is executed at Los Angeles, California, on September 12, 2018.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

　　　　　　　　　　　　　　　　　　　　  /s/ Michelle Carlos          .
　　　　　　　　　　　　　　　　　　　　**MICHELLE CARLOS**