NICOLA T. HANNA
United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JENNIE L. WANG (Cal. Bar No. 233392)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2450
    Facsimile: (213) 894-0141
    E-mail:    jennie.wang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>TREVON MAURICE FRANKLIN,<br><br>    Defendant. | No. CR 17-206(A)-JAK<br><br>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT TREVON MAURICE FRANKLIN; EXHIBITS<br><br>Sentencing Date: Sep. 27, 2018<br>Sentencing Time: 8:30 a.m.<br>Location:    Courtroom of the Hon. John A. Kronstadt |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jennie L. Wang, hereby files its sentencing position regarding defendant TREVON MAURICE FRANKLIN.

This sentencing position is based upon the attached memorandum of points and authorities and Exhibits A and B attached hereto, the Presentence Investigation Report disclosed on August 15, 2018, the

//

//

files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 12, 2018    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

      /s/
JENNIE L. WANG
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On June 14, 2018, defendant TREVON MAURICE FRANKLIN ("defendant") pleaded guilty pursuant to a plea agreement to the sole count of the First Superseding Information, misdemeanor criminal copyright infringement, in violation of 17 U.S.C. §§ 506(a)(1)(B) and 18 U.S.C. §§ 2319(a), (c)(3). (Docket 40, Presentence Investigation Report ("PSR") ¶¶ 1-2.) For the reasons set forth below, the government recommends the high-end sentence of six months' imprisonment, to be followed by a one-year term of supervised release, and a mandatory special assessment of $100.

**II. THE PSR**

The U.S. Probation Office's ("USPO's") PSR, which was disclosed on August 15, 2018, determined that defendant's total offense level is 8, based on the following:

| | | |
|---|---|---|
| Base Offense Level: 8 | | [U.S.S.G. § 2B5.3(a)] |
| Distribution of Work Being Prepared for Commercial Distribution: +2 | | [U.S.S.G. § 2B5.3(b)(2)] |
| Uploading: +2 | | [U.S.S.G. § 2B5.3(b)(3)] |
| No Financial Gain: -2 | | [U.S.S.G. § 2B5.3(b)(4)] |
| Acceptance of Responsibility[1]: -2 | | [U.S.S.G. § 3E1.1] |

(PSR ¶¶ 20-30.) All but the second factor were also agreed upon by the parties in the plea agreement. (Docket 25, Plea Agreement ¶ 10.) Because the parties agreed in the plea agreement that either party could seek other Sentencing Guidelines adjustments, id. ¶ 9, the

---

[1] The government agrees with the PSR's finding of the adjustment for acceptance of responsibility.

government agrees with the USPO that an additional two levels should be added pursuant to U.S.S.G. § 2B5.3(b)(2) for defendant's distribution of a work being prepared for commercial distribution. However, these additional two levels do not change defendant's resulting guideline range.

The PSR also calculated a criminal history category of I based on no criminal history points. (PSR ¶ 37.) Defendant's resulting advisory guideline range based on a level eight is zero to six months' imprisonment. For the reasons set forth below, the government recommends a custodial sentence at the high end of that range of six months' imprisonment, to be followed by a one-year period of supervised release, and a mandatory special assessment of $100.

**III. OFFENSE CONDUCT**

On February 20, 2016, defendant uploaded an unauthorized copy of the movie *Deadpool* that he had downloaded from the Internet to his Facebook account, under the name "Tre-Von M. King." (PSR ¶¶ 10-11.) The victim in this case, Twentieth Century Fox Corporation ("Fox"), is the copyright holder of the *Deadpool* movie franchise. (Id. ¶ 10.) When defendant uploaded *Deadpool* to his Facebook account, the movie was still being shown in theaters and had not yet been made available for the public to rent or purchase. (Id. ¶ 12.) The copy that defendant made available to others to view on Facebook was viewed over 6 million times in the two days between February 20 and 22, 2016. (Id.)

Attached as Exhibit A is a copy of screenshots of defendant's Facebook page from February 22, 2016. (Exhibit ("Exh." A.) Defendant posted on his Facebook page on February 20, 2018, at 8:20

1  p.m.: "TO ALL MY FACEBOOK FRIENDS, I HOPE YOU ENJOY DEADPOOL THE FULL
2  MOVIE, WHICH IS POSTED ON MY WALL. I GOT YALL FOR THE JUGG💯 😵"
3  (Id. at TMPID00039; see also id. at TMPID00045 (defendant posted at
4  8:08 p.m. earlier that same day: "DEADPOOL (2016) FULL MOVIE WITH
5  GOOD AUDIO #LIKE #SHARE #COMMENT").)  As described herein and
6  evidenced by Exhibit A, defendant interacted heavily with other
7  Facebook users who commented on his uploading of *Deadpool*.  (See
8  generally Exhibit A.)  Some users commented that defendant had
9  uploaded the full movie and that they were able to watch it.  (See,
10 e.g., id. at TPMID00011 (Roger Palmer posted: "Greg, this dude has a
11 full fuckin video of Deadpool on his fuckin facebook"); TMPID00016
12 (Gabrielle K Neal posted: "Yay!!! Just watched ya deadpool movie
13 thanks a lot!"); TMPID00022 (Shawn Lewis messaged defendant: "Bro my
14 friends in Oklahoma even watched your video    Damn," to which
15 defendant responded by "liking" the message); TMPID00032 (Van
16 Helsingden Dylan posted: "Can I still download it? Lol," to which
17 defendant responded, "Better hurry"); TMPID00039 (Marvin Ford
18 messaged defendant: "Bro really uploaded. Whole movie joint on here
19 lol," to which defendant responded by "liking" the message);
20 TMPID0043 (Devon Fernandez posted: "Thnx for posting it I thought I
21 was never gonna see it c:"  Defendant replied, "Welcome."  Shawn
22 Miller posted: "Thanks bro it was awesome"); TMPID00044 (Benjamin
23 Brooks posted: "Thanks for the movie big dog," to which defendant
24 replied, "Welcome"); TMPID00048 (Zeke Torres posted: "they really
25 have the whole movie on here" and Jack Rogers posted: "this is how I
26 watched deadpool").)
27      Defendant also indicated that he planned to continue illegally
28 uploading movies.  (See, e.g., id. at TMPID00026 (Tim Conklin posted:

3

1  "You gunna get that new batman and superman?  Defendant responded,
2  "Wait on it, I got yall"); TMPID00029 (Avinash Brian Dabideen posted:
3  "On behalf of Trinidad, thanks for #deadpool. Can we expect the same
4  great service for #TMNT2 please?  Defendant responded, "Yesir will
5  do").)  Defendant even created a Facebook group for the purpose of
6  illegally sharing movies with others, posting "EVERYBODY JOIN" in
7  relation to the Facebook group he created called "BOOTLEG MOVIES."
8  (Id. at TMPID00011; see also id. at TMPID00013 (defendant posted: "I
9  Just Started A New Group Called 'Bootleg Movies' Go Look It Up And
10 Join #IfYouFuckWithMe #FuckWitIt$^{100}$ That's Where I'm Post More Movies.
11 That's Coming Out.").)  Defendant also admitted that the link he
12 provided was available to the public.  (Id. at TMPID00017 (Krystal
13 May posted: "When I look up bootleg movies the page doesn't pop up..
14 Can you fix that?  Defendant responded, "Its public, I don't know
15 what you want me to fix?").)

16     Many Facebook users warned defendant that his uploading of
17 *Deadpool* was a crime.  (See, e.g., id. at TPMID00014 (Sean Dalton
18 posted: "A reminder." accompanied by a screenshot of the following
19 text: "(i) 'The unauthorized reproduction or distribution of a
20 copyrighted work is illegal.  Criminal copyright infringement,
21 including infringement without monetary gain, is investigated by the
22 FBI and is punishable by fines and federal imprisonment.'"  Sean
23 Dalton also posted: "Take notice, it mentions nothing about profit.
24 You're depriving profit from the studio.  I'd say roughly $20Mil
25 now."  Sammy Hijazin responded: "It's already viral"); TPMID00015
26 (Joe Byrne posted: "5 years federal prison. Huge fine. Have fun with
27 this."); TMPID00043 (in response to another user calling defendant a
28 "FB legend," John Corral posted: "He is not a legend… Its basically

1 like he killed someone and is walking around covered in blood
2 bragging about it expecting not to be caught.. He is going to be
3 prosecuted and go to jail. That is not legend. That is dumbass").)
4     Defendant's reactions to being told that uploading *Deadpool* to
5 Facebook was a federal crime ranged from nonchalance to irritation.
6 (See, e.g., id. at TMPID00016 (defendant posted: "I'm fucking
7 straight, why tf yall haters worried about MY LIFE OR WHAT'S GONE
8 HAPPEN TO ME"); TMPID00022 (defendant posted: "All I did was upload
9 it, as far as the shares, likes, and comments I can't control what
10 people do on fb just what I do. So hate on the fact, that I still
11 dgaf about yall irrelevant ass individuals #ThatPart"); TMPID00024
12 (defendant posted: "I blocked that, opp ass n***a for tryna tag FBI n
13 shit"); TPMID00030 (defendant posted: "If it's a crime, why my shit
14 ain't got reported??? That part, Just stfu already"); TMPID00033
15 (Will Laraby posted: "From behind bars? I didn't know you got the new
16 movies in jail?" Defendant responded by correcting his grammar:
17 "*get"); TMPID00034 (Chris Shanks posted: "oh man..the ignorance of
18 people. 'You aren't profiting' so it's ok to show pirated movies.
19 Man, people like you make it easy for Feds or Police to find you.
20 That's like robbing a bank and then posting it online. lol
21 smh. . . ." Defendant replied, "Fuck off"); TMPID00037 (Cody Thomas
22 posted: "Why's everyone mad you did this? I think it's awesome you
23 posted this. Fuck paying them money . Thanks for the vid man!"
24 Defendant replied, "Idk but it's getting annoying smh"); TMPID00042
25 (defendant posted: "Thank everyone that didn't comment anything
26 negative Fuck those who did or still is 💯").) Defendant also
27 insisted that he would not go to jail for his crime: "Fuck 12, I got
28 the ultimate way out of this, yall might be surprised on how I won't

go to jail but just become more famous." (Id. at TMPID00035; see also id. at TMPID00022 (defendant posted: "Woke up to see DeadPool got 2.7 million views    damn Daniel! I see all these ppl talking the Feds gone get me, well where they at??? I'm still going up"); TMPID00024 (Greg Zeller posted: "You're a fucking idiot, they're coming buddy just wait," to which defendant responded, "Waiting ...."); TMPID00034 (defendant posted: "Still waiting....."); TMPID00035 (defendant posted: "That's why I'm just sitting back smoking out my bong laughing at these mfs who think they know what they talking I haven't sold shit to anyone, or made copies. I haven't done anything illegal 💯."); TMPID00038 (defendant posted: "FUCK THE SYSTEM💯").)

**IV.  ANALYSIS OF THE SECTION 3553(A) FACTORS**

    **A.  Nature and Circumstances of the Offense**

Section 3553(a)(1) requires consideration of the nature and circumstances of defendant's crime in determining an appropriate sentence. While defendant's crime is a misdemeanor due to the "complex issues of fact related to the cause or amount of the victim's losses . . ." (PSR Letter at 1), the offense conduct itself is serious, particularly in light of defendant's attitude about it. Given that the government has not pursued any loss related to defendant's crime (despite the fact that in two days alone, the video of *Deadpool* that defendant uploaded was viewed over six million times, and there is evidence that numerous people watched the movie in its entirety), defendant has already effectively been given a reduction in his sentence. Defendant's guidelines range therefore represents an extremely fair assessment of the punishment that he should face. Given the brazen and public manner in which defendant

6

both flouted the law (which was pointed out to him by several Facebook users) and appeared not to care that he was willfully infringing on Fox's copyright (which was also pointed out to him by Facebook users), and given defendant's insistence that he was not going to suffer any consequences for his crime, other than to "become more famous" (Exh. A at TMPID00035), a custodial sentence of six months' imprisonment is both necessary and sufficient to address the nature of circumstances of the offense and to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

**B.  History and Characteristics of Defendant**

Section 3553(a)(1) also calls for factoring the history and characteristics of defendant into his sentence. In mitigation, defendant has a son. However, in aggravation, defendant's criminal history underscores what the USPO has mildly characterized as his "respect for the law . . . not [being] what it should be":

> Although [defendant] does not have any prior convictions, [he] has been charged with violent crimes involving his child, his child's mother, and another individual. This crime allegedly occurred after he committed the instant offense. While on pretrial supervision, Franklin drank excessively and smoked marijuana."

(PSR Letter at 5.) Attached as Exhibit B is a copy of the Fresno Police Departments reports regarding the domestic violence incident on May 23, 2017, during which defendant was arrested for assaulting his then-pregnant ex-girlfriend in front of their son. (Exh. B.) His ex-girlfriend and the mother of his child ("V-1") reported:

> . . . [Defendant] hit her. V-1 described the first hit to be a slap to her left side of the face followed by a punch to the left side of her face as well. In shock, V-1 asked [defendant] why had had hit her and she began getting attacked by [defendant]. She said [defendant] began hitting multiple times to the body. Thier [*sic*] child was

7

1     inside the stroller and almost got knocked out of it during
2     the struggle.

3 (Id. at TMPID00368.)  Moreover, the May 23, 2017 incident was not the
4 first for which police were called to respond.  The reported domestic
5 violence history on defendant included police responding on November
6 16, 2015 (victim reported that defendant "puts his hands on [her]")
7 (id. at TMPID00374); March 15, 2016 (victim reported that defendant
8 punched her two times in the thigh) (id.); and February 15, 2017
9 (victim reported that defendant grabbed her neck when they were
10 exchanging their child) (id. at TMPID00375).

11      This history considered in conjunction with defendant's
12 performance while on pretrial supervision for the instant case shows
13 that a custodial sentence is necessary to address defendant's
14 consistent and apparently escalating disrespect for the law.  Even
15 after defendant was arrested for the instant offense and released
16 pending resolution of this case, defendant had several instances of
17 not complying with the conditions of his release.  (See Docket 41,
18 PSA Letter Requesting Order to Show Cause Hearing as to Defendant
19 ("PSA Letter").)  Defendant admitted to drinking alcohol to excess at
20 least four times a week; admitted to using marijuana on August 1,
21 2018, and again on August 27, 2018, when he advised that he used
22 marijuana "daily"; stated that he knew there was an active
23 restraining order against him restricting him from contacting V-1 but
24 was living with her; and admitted that "he knows he missed court for
25 his domestic violence case and knows he has an active bench warrant
26 for a failure to appear." (Id. at 2.)  After this Court ordered
27 defendant on September 6, 2018, to address his outstanding bench
28 warrant, defendant's counsel reported that he did so.  (Docket 45,

Defendant's Status Report.)  These facts serve to underscore the need for this Court to address defendant's history of noncompliance and lack of respect for the law with a custodial sentence.

### C. Deterrence

Section 3553(a)(2)(B) requires sentences to "to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  Here, a custodial sentence of six months' imprisonment will do just that, as it will show the general public that piracy is a serious offense with serious consequences.  Indeed, defendant's own words indicate that he believed the opposite was true.  (See Exh. A.)  Without the necessary consequence to defendant of a custodial sentence, all those thousands of Facebook users who liked, followed, and posted about defendant's illegal uploading of *Deadpool*, as well as the general public could erroneously believe that people do not suffer real consequences for such a crime, which could have detrimental effects on the movie industry and the individuals who make their livelihood from it.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a sentence of six months' imprisonment, to be followed by a one-year period of supervised release, and a mandatory special assessment of $100.